**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DIANDRE COLLIER aka CARMIN COLLIER<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO and CHICAGO POLICE OFFICER MAHMOUD HALEEM (#14193),<br><br><br>        Defendants. | Case No: 22-cv-2865<br><br>Judge: Hon. John J. Tharp Jr.<br><br>Mag. Jeffrey Cummings<br><br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF**
**CHICAGO'S MOTION FOR ENTRY OF ORDER IN LIEU OF ANSWER**

**TABLE OF CONTENTS**

INTRODUCTION........................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................2

ARGUMENT ..............................................................................................................................3

I. UNDER CIRCUIT LAW, THE CITY IS A PROPER PARTY TO THIS ACTION..............3

II. THE MOTION ASKS THE COURT TO ALTER CIRCUIT LAW WITHOUT ARTICULATING A LEGAL BASIS UPON WHICH TO DO SO, AND THE RATIONALES IT DOES OFFER ARE UNCONVINCING ..............................................................................5

    A. De Facto Dismissal of the City, a Proper Party to this Action, Would Not Be a Sound Use of the Court's Inherent Powers ......................................................................................5

    B. The City Should Not Be Permitted to Shift Discovery Burdens to Plaintiff...................6

    C. Concerns About Conflicts of Interest are Vague, Misplaced, and Unpersuasive ...........8

    D. The City's Cited Case Law Does Not Support Granting the Motion ..........................10

CONCLUSION .........................................................................................................................11

i

Plaintiff Carmin Collier ("Plaintiff"), by her undersigned counsel, submits this Response in opposition to Defendant City of Chicago's (the "City") Motion for Entry of Order in Lieu of Answer ("Motion"). In support, Plaintiff states as follows:

## INTRODUCTION

Plaintiff Carmin Collier was attacked by a hammer-wielding Chicago police officer while observing a political demonstration in May 2020.[1] She was, at the time of the attack, following a lawful order to leave the area. Almost two years after these events, she brought suit, naming Chicago police officer Haleem as the Defendant individually responsible for her constitutional injury, and naming the City as a Defendant pursuant to the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/9-102. As the City's Motion acknowledges, such is the common practice in this Circuit.

Despite the uncontested adequacy of the allegations in Plaintiff's Complaint to state federal and state law claims and establish her right to relief, the City now attempts to avoid answering or otherwise pleading in response to the Complaint, or indeed participating in the action in any way, offering the instant Motion for Entry of Order in Lieu of Answer as an attempt to see itself dismissed from the suit.[2] Though a more appropriate mechanism for seeking dismissal lies available to defendants in Fed. R. Civ. P. 12(b), the City instead asks this Court to relieve it from participation via a Motion that identifies no discernable legal standard, nor any compelling reason to grant the extraordinary relief it seeks. The Motion does cite to three district court holdings, but these are factually inapposite, procedurally inapposite, or both, and against the overwhelming weight of Seventh Circuit law besides.

---

[1] Plaintiff's legal name is Diandre Collier. Plaintiff uses the name Carmin along with she/her pronouns, as made clear in the Complaint. The City inadvertently misgenders her in its Motion.

[2] In addition to relief from discovery and pleading obligations, the Motion also asks this Court to issue an Order setting forth that "there is no basis for liability on the part of the City articulated in Plaintiff's Complaint."

At base, the issue before the Court is that the City of Chicago simply does not want to be involved in yet another lawsuit over the misconduct of one of its officers. That's all well and good, but the solution is for the City to exercise its considerable power to stop police misconduct by its officers, not to cast aside decades of Circuit law out of convenience.

The relief sought in the City's Motion—de facto dismissal—would prejudice Plaintiff even if it were procedurally proper, a concern that far outweighs the administrative burden attendant to the maintenance and legal defense of its police department. Granting the relief sought in the filing before the Court, creative though that filing might be, is not the solution, nor would it be an appropriate exercise of the Court's inherent powers. The Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 31, 2020, Chicago police officers at the Ford City Mall ordered protestors and onlookers to disperse from the area, prompting Plaintiff Carmin Collier and her friends, all of whom were onlookers, to enter Plaintiff's van and drive out of the mall's parking lot. Dkt. 1 ¶¶ 13-17. As she departed—plainly in compliance with the dispersal order—Defendant Officer Haleem smashed her driver's side window with a hammer. *Id* at ¶ 18. Hammer in hand, Defendant Haleem proceeded to yell at, menace, shove, and grab Plaintiff, ignoring her pleas that he not touch while violently wrenching her arm. *Id* at ¶ 20. As Defendant Haleem repeatedly shouted "Get the fuck out of here," Plaintiff got back in her van and left the scene, terrified and traumatized, having suffered injuries that continue to affect her today. *Id* at ¶¶ 22-23; 26-20.

Plaintiff brought this suit against Defendant Haleem and the City of Chicago. Against Haleem, Plaintiff claims violations of her Fourth Amendment rights to be free from unreasonable seizures of person and property. Dkt. 1 ¶¶ 30-43. Plaintiff has also brought a claim against Haleem's former employer, Defendant City, under Illinois law. *Id.* ¶¶ 44-47. While Defendant Haleem has answered the Complaint, Dkt. 16, Defendant City declined to file a responsive

2

pleading and instead filed the instant Motion indicating that it will indemnify Officer Haleem if he is found liable to Plaintiff and seeking to be removed from participation in the action. Dkt. 16-17.

## ARGUMENT

### I. UNDER CIRCUIT LAW, THE CITY IS A PROPER PARTY TO THIS ACTION

In the Seventh Circuit, Illinois plaintiffs may, and often do, bring a state law claim against municipalities for indemnification contemporaneous with constitutional claims against police officer defendants. *Cates v. Manning*, 2020 U.S. Dist. LEXIS 65004, 2020 WL 1863299, at *3 (N.D. Ill. Apr. 14, 2020) ("[Section] 1983 plaintiffs routinely assert section 9-102 indemnification claims against municipalities simultaneously with the underlying claims against the individual officers who may have harmed them."). This practice is well-accepted. *See Vinson v. Vermilion Cty.*, Ill., 776 F.3d 924, 930 (7th Cir. 2015) (reinstating indemnification claim "dependent on the validity" of other claims in a Fourth Amendment search case). There is no reason to depart from this practice in the instant case.

A statutory indemnification claim under 745 ILCS 10/9-102 reflects the Illinois General Assembly's assessment of a municipality's obligations with regard to the wrongdoing of its employees. Put differently in *Wilson v. City of Chicago*, a Jon Burge coerced confession case that often leads discussion in this Circuit where disputes arise regarding indemnification, section 9-102 "confers a right on the victim of the employee's tort." 120 F.3d 681, 686 (7th Cir. 1997).

The Seventh Circuit there made clear that a section 1983 plaintiff need not wait to "proceed under section 9-102 until a judgment against an individual defendant has become final." *Id.* at 685 (cleaned up). Indeed, many courts in this Circuit have acknowledged and encouraged the participation of a municipal indemnifying employer in a constitutional lawsuit, routinely allowing section 1983 plaintiffs to file 745 ILCS 10/9-102 indemnity claims before they have obtained a judgment. *See, e.g.*, *Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 822–23 (N.D. Ill. 2006)

(collecting cases); *Griffin v. Meagher*, 2009 WL 5174684, *5 (N.D. Ill. Dec. 21, 2009) ("there is *no reason* why a plaintiff should not be permitted to proceed with an indemnification claim under § 10/9-102 before his actions against municipal employees are final.") (emphasis added) (Dow, J.); *Walker v. City of Chicago*, No. 21 CV 2648, 2022 U.S. Dist. LEXIS 59918, 2022 WL 971871, at *7 (N.D. Ill. Mar. 31, 2022) (Granting motion to dismiss *Monell* claim but noting "[b]ecause the fabricated-evidence claim survives against the individual Defendants, the indemnification claim survives too.") (internal citations omitted) (Chang, J.); *Cates v. Manning,* 2020 WL 1863299, at *3 (N.D. Ill. Apr. 14, 2020) (rejecting municipal defendant's request for a similar order as that sought here – including a request to be excused from discovery – on the grounds that the request was "tantamount to dismissal," which was not appropriate because the plaintiff had alleged viable claims) (Alonso, J.).

The City's Motion concedes that the law is such that it is a proper party to the action. Dkt. 17, ¶ 5, but it does not offer a convincing legal basis for departing from it, as explained in Section II, *supra*. The Motion departs from firm legal ground, however, when it asserts that a promise to indemnify in the event of individual liability means that it can avoid answering the Complaint and participating in discovery, much less being absolved of liability via judicial order without answering or filing a responsive pleading. *See* Dkt. 17, Wherefore ¶. And although the City has offered, in its Motion, to admit that Officer Haleem acted in the scope of his employment when he attacked Plaintiff with a hammer, this admission and implicit promise of indemnification cannot serve to dismiss the claim because the fact of Defendant Haleem's liability must be established via judgment. *See Loza City of Chicago,* No. 09 CV 2474, 2009 U.S. Dist. LEXIS 89582, 2009 WL 3125542, at *1 (N.D.Ill. Sept. 25, 2009) ("the actual fact that gives rise to a claim under § 9-102 is the court entering judgment against the employee defendant, even though it may be appropriate for a plaintiff to bring the claim in anticipation of that fact") (Shadur, J.).

4

This sought departure from 7th Circuit practice is not backed by sound legal authority, should be rejected, and the Motion should be denied.

## II. THE MOTION ASKS THE COURT TO ALTER CIRCUIT LAW WITHOUT ARTICULATING A LEGAL BASIS UPON WHICH TO DO SO, AND THE RATIONALES IT DOES OFFER ARE UNCONVINCING

The Motion gestures at the Court's inherent powers, but does not define them or outline why granting the extraordinary relief it seeks would be an appropriate use thereof. Its concerns regarding the burden of discovery and conflicts of interest are overwrought, and its legal authority is misplaced. The Motion should be denied.

### A. De Facto Dismissal of the City, a Proper Party to this Action, Would Not Be a Sound Use of the Court's Inherent Powers

The Motion seeks to alter Circuit law without offering any legal standard against which to measure its claim to relief, and should be denied on the basis of that omission alone. Plaintiff is left to infer that the Motion asks the Court to use its inherent powers to grant the sought relief.

"A district court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631 (1962)). "The inherent powers of federal courts are those which 'are necessary to the exercise of all others.'" *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980) (quoting *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812)). These powers, when exercised, should be a "reasonable response to the problems and needs" of securing the aim of justice in judicial administration. *Dietz v. Bouldin*, 579 U.S. at 45–46 (quoting *Degen v. United States*, 517 U.S. 820, 823-824 (1996)). The exercise of these powers "cannot be contrary to any express grant of, or limitation on, the district court's power contained in a rule or statute." *Id.*

Here, it is clear that the remedy Defendant seeks—in substance, dismissal from the action— does in fact implicate powers governed at least one "rule or statute," namely, Rule 12(b). *Dietz*, 579 U.S. at 45-46; Fed. R. Civ. P. 12(b). If a party wants itself relieved from defending an action, one option is to assert defenses in a responsive pleading and ask for dismissal. Fed. R. Civ. P. 12(b). These arguments may then be assessed and evaluated against established standards developed for like situations. While all parties may not like a court's ruling on any given Rule 12(b) motion, the baseline from which argument and analysis proceeds is, theoretically, nonetheless commonly understood and intelligible. This Rule-bound state of affairs advances the "fair administration of justice," *Dietz*, 579 U.S. at 45, that inherent powers are designed to further, and does so without the necessity of their exercise.

Defendant's Motion, understandably, steers clear of Rule 12(b), given that the overwhelming weight of legal authority indicates that it is properly party to the case as a Defendant to Plaintiff's state law indemnification claim. *See* Section I, *infra*. But this does not provide a justification to end-run the Federal Rules and seek dismissal based on the Court's inherent powers. *See Cates,* 2020 WL 1863299, at *3 (relief akin to that sought here "tantamount to dismissal").[3]

As such, the exercise of inherent powers to grant Defendant's sought relief here would be a departure of authority for the Court, and an unsound course given the avenues for dismissal and defense already articulated by the Rules of Civil Procedure. The exercise of judicial power Defendant seeks—and one must presume, because the Motion does not explain the legal basis for the relief it seeks—would be "contrary to any express grant of or limitation … contained in a rule or statute," *Dietz*, 579 U.S. at 45-46, and thus should not be undertaken.

## B. The City Should Not Be Permitted to Shift Discovery Burdens to Plaintiff

---

[3] Fed. R. Civ. P. 41(b), which also outlines the contours of judicial power with regard to dismissal, is not helpful to Defendant in the present case either—Plaintiff has not failed to comply with the Rules, nor has she failed to prosecute her action.

The Motion raises a series of concerns regarding its participation in this case, among them the burden of responding to discovery. Plaintiff respectfully submits that this is not sufficient reason to grant the sought relief, which is extraordinary.

Although there is a superficial allure to the notion that the City of Chicago has a lot on its plate such that it should be relieved wholesale from defending another police misconduct case to which it is a proper defendant, in practice, such an argument does not withstand testing. For example, if the Motion is granted and the City is relieved from discovery obligations, its agents and constituent agencies will nonetheless possess relevant and discoverable information by virtue of the City's role as employer of Defendant Haleem and operating authority of the Chicago Police Department, Civilian Office of Police Accountability, Office of Emergency Management and Control, and other entities. COPA, for example, may possess records and statements from any investigation that may have occurred into the attack; CPD may possess employment records, disciplinary records, or other information about both Defendant Haleem and other CPD officers present at the time of the attack; OEMC may possess City data that would assist in the determination of the action; the list goes on. All of these documents are in the City's possession, and none of these documents are in possession of Defendant Haleem, vastly enlarging the nature, expense, and complexity of the action should the City not participate as the law requires. (Defendant Haleem, further, has retired from CPD, leaving him with even less access to relevant records and information.)

Relieving the City from discovery obligations due to an alleged burden it bears because of its *own* officers' cumulative police misconduct, and shifting those obligations to Plaintiff, would be a counter-intuitive and fundamentally unjust result. Carmin Collier should not have to arrange for service of subpoenas to a round-robin cast of different departments, agencies, and attorneys to obtain information she needs to prosecute her claim when decades of precedent indicate that the

7

City is a proper defendant from whom she could request documents via Rule 34. "[T]he Court's normal processes for limiting discovery to what is relevant and proportional to the needs of the case under Rule 26 are adequate to protect the moving defendants against overly burdensome discovery requests." *Cates*, 2020 WL 1863299, at *4.

Similarly, it is not even clear that the burden would be relieved on the City. It would still have to respond to Plaintiff's expensive, more attenuated attempts to seek information that it possesses, and would need attorneys to handle those tasks, as well, to say nothing of any motion practice arising from contested subpoenas to the now non-party City's constituent agencies. *See Cates,* 2020 WL 1863299, at *4 (noting while rejecting order similar to that sought here that "defendants may well have certain information that is of use in determining the merits of plaintiff's claims, in which case the order defendants seek may hinder the speedy resolution of this case rather than protect against a waste of resources"). Defendant also notes that it should not be obligated to *propound* discovery to Plaintiff in this matter—if the Motion is denied, that choice will remain the City's and the City's alone (Plaintiff certainly will not insist on it).

In short, the claim before the Court—which is Plaintiff's to prosecute as she sees fit, within the Rules—will be disposed of in a more just and efficient way if the City remains an active participant in the action.

### C. Concerns About Conflicts of Interest are Vague, Misplaced, and Unpersuasive

The City's Motion also raises the possibility of conflicts of interest between itself and its officer-employees should it remain in the case. The City has, again, not offered any legal standard against which to evaluate its Motion, or its particular arguments regarding conflict and burden. But under any metric, its conclusion—that it should be relieved wholesale from participation in the suit as a defendant because of a potential conflict in its Law Department—is an erroneous one.

The City notes that there is the possibility of a conflict of interest between itself and its officers. Dkt. 17 ¶ 7. It notes that in the context of section 1983 claims, "[r]esolution of [conflicts of interest between City and officers are] not easily remedied and, often, the City must task a separate lawyer or lawyers to represent the City." *Id*. While all of this may be true, the City's error comes as it attempts to leverage this hypothetical situation into a sufficient reason for granting its Motion.

The City no doubt speaks from experience when it asserts that conflicts of interest may arise during a police misconduct lawsuit, and that these conflicts may emerge at different times or be cumbersome to remedy. Plaintiff does not dispute this, except to note the City's Motion remains lacking in detail in that it does not articulate what conflicts of interest rules it anticipates contending with, in this case or any, and also in that it does not offer a legal rule through which a party may be dismissed from a lawsuit because of a potential conflict of interest. The City makes no reference to any specific facts of this case which present potential or actual conflicts of interest motivating the concern. Rather, the City maintains that as a result of being named as a Defendant, the potential for an unspecified conflict of interest that could require "needless complication and drain of resources" for the City to remedy makes their continued participation in this case unjustifiable. Dkt. 17 ¶ 7. (To the extent the City does identify the potential conflicts of interest that should motivate this Court to grant their Motion, it does so by way only of speculative example, related to simultaneous representation in a COPA proceeding and a federal lawsuit.)

The City also fails to point to any judicial decision granting effective dismissal as a remedy to a conflict of interest. Indeed, the risk of conflicted representation was not even raised or addressed in *any* of the three cases the City cites as persuasive or exemplary authority for its Motion. *Dukes v. Washburn*, Case No. 21 C 3672, Dkt. 78, 81 (N.D. Ill. June 28, 2022); *Wilson v.*

*Burge, et al.*, Case No. 21 C 3487, Dkt. 42, 133 (N.D. Ill. Mar. 4, 2022); *Adamidis v. Cook County, et al.*, Case No. 19 C 7652, Dkt. 16, 18 (N.D. Ill. Feb. 10, 2020).

If the City is contending with a real or prospective conflict of interest, it has the same options other attorneys or law firms do: it may move to withdraw, conduct screening and walling procedures between its teams of attorneys, or take other measures authorized by statute and ethical rules. Regardless of what steps it may take here or elsewhere, though, the City's concerns about conflicts of interest should not move this Court to offer the unprecedented relief sought, and the City's Motion should be denied.

### D.  The City's Cited Case Law Does Not Support Granting the Motion

In support of its Motion, the City cites three district court cases where indemnifying municipalities have been allowed to exit litigation in an equivalent or similar manner as the City attempts to achieve here. Dkt. 17 ¶ 10. These cases are variously distinguishable, decided on non-substantive grounds, and lacking a specific standard that is applicable to this case.

First, in *Dukes v. Washburn*, No. 21 CV 3672 (N.D. Ill. June 28, 2022), the defendant municipality's Motion for Entry of Order in Lieu of Answer went uncontested by the plaintiff. *Id.* Dkt. 78, 81. Here, the Motion is disputed, rendering this case of limited usefulness. Second, in *Wilson v. Burge, et al*., Case No. 21 CV 3487, (N.D. Ill. Mar. 4, 2022), the Court granted the indemnifying county's Motion for Entry of Order in Lieu of Answer on the basis of the Plaintiff's admission that it remained in the complaint for the sole purpose of indemnification. Dkt. 42, 133. Plaintiff makes no such admission here. Finally, the City cites *Adamidis v. Cook County, et al.*, Case No. 19 CV 7652, (N.D. Ill. Feb. 10, 2020), where, like *Dukes*, the plaintiff did not respond or object to the County's Motion for Entry of Order in Lieu of Answer, which is, again, not the situation here. Dkt. 16, 18.

Because none of its authority addresses the present situation, and nor is any of those holdings binding upon this Court in the first place, the Motion should be denied.

## **CONCLUSION**

The City's Motion seeks to remove itself from a case in which it is a proper party, and does so while articulating no legal standard for assessing the issue and while bypassing the avenues to seeking dismissal available to it in the Rules. It overstates the hypothetical burden to itself of defending this action, and ignores the undue prejudice to Plaintiff of its absence. The Motion should be denied in its entirety.

Respectfully submitted,

/s/ Daniel Massoglia

*One of Plaintiff's Attorneys*

Daniel Massoglia
Ashley Rodriguez
Joseph DiCola
Dan Lastres*       *Illinois Rule 711 Graduate practicing pursuant to LR83.13
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708-797-3066
E: daniel@first-defense.org
E: ashley@first-defense.org
E: joseph@first-defense.org
E: lastres@first-defense.org

## CERTIFICATE OF SERVICE

I, Ashley N. Rodriguez, hereby certify that I served a copy of this document on all counsel of record on October 12, 2022 by using the Court's CM/ECF system, which generates electronic notice to all parties.

Respectfully submitted,

/s/ Ashley N. Rodriguez
